# KREAG v. GEEN.

---

PATENTS; APPEALS; PATENTABILITY; INTERFERENCE; MASTER AND SERVANT.

1. Where the Patent Office decides that an invention is patentable, and issues a patent therefor, such decision is binding on this court, on an appeal by one of the parties to an interference subsequently declared from a decision of the Commissioner awarding priority of invention to his adversary.

2. When one conceives the principle or plan of an invention, and employs another to perfect the details and realize his conception, although the latter may make valuable improvements therein, such improved results belong to the employer. (Following *Milton* v. *Kingsley*, 7 App. D. C. 531; *Miller* v. *Kelley*, 18 App. D. C. 163; *Gedge* v. *Cromwell*, 19 App. D. C. 192; *Gallagher* v. *Hastings*, 21 App. D. C. 88; and *Flather* v. *Weber*, 21 App. D. C. 179.)

No. 368.    Patent Appeals.    Submitted November 9, 1906.    Decided December 4, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Reversed.*

The COURT in the opinion stated the facts as follows:

The subject-matter of invention in this case is an improvement in brushes used for polishing shoes. William A. Geen, the appellee, holds a patent for the invention issued October 4, 1904, upon an application filed December 3, 1903. John Adam Kreag, the appellant, filed an application making the same claims on November 25, 1904. An interference was declared between the two, with issue defined as follows:

1. In a brush, a back, a felt pad, and a pad cover having free

side edges and constituting a brushing surface, said pad being compressed near its ends by fastening devices, and the parts between the fasteners of the pad and the proximate ends of the brush still further compressed by the cover fastened to the said ends.

2. In a brush, a back, a felt pad, and a pad cover constituting a brushing surface, said pad having fluted edges whereby said edges are made more compressible.

3. In a brush, a back, a plurality of felt pads, and a pad cover constituting a brushing surface, said pads having fluted edges whereby said edges are made more compressible.

4. In a brush, a wooden back having the overhanging end extensions, a plurality of felt pads tacked to the back near its ends, a pad cover consisting of a strip of animal skin with its natural covering, said pads being narrower than the back and narrower than the strip and having fluted edges, and fastening devices securing the strip to the back under the extensions, said natural covering of the strip of skin extending outside of the back, both at its side and ends.

The Examiner of Interferences decided in favor of Geen, and was reversed by the Examiners-in-Chief, who awarded priority to Kreag. This decision was in turn reversed on appeal to the Commissioner, from whose decision awarding priority to Geen this appeal has been taken by Kreag.

*Messrs. Osgood & Davis* for the appellant.

*Mr. Faust F. Crampton* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The decision that the issue is a patentable one, having been made in the Office and a patent issued thereon to Geen, although it is confessed by the Examiner of Interferences that "the invention is an exceedingly limited one," is binding upon us on this appeal. Assuming, as we must, for the purposes of this

case, that the original conclusion arrived at, it appears, with considerable difficulty in the Office in passing Geen's application to patent, was a sound one, the single question for our determination is the disputed claim of priority between the patentee and the later applicant.

The question as presented on the evidence is one of originality, rather than the ordinary one of priority between independent inventors.

Kreag was an officer of the American Chemical Manufacturing & Mining Company, that was engaged in the manufacture of a shoe polish called "Shinola." Geen was his neighbor, and was the manager of a department in the Fred O. Todd Company, whose business was the manufacture of shoes. Geen was also a mechanic of some skill, and said, in giving testimony, that Kreag thought him capable of producing a brush suitable for paste polish. As early as November, 1901, Kreag had been looking about for a satisfactory brush for use with his "Shinola" polish. He collected a number of brushes in ordinary use for polishing with paste, and, finding none to answer his purposes, applied to Geen to assist him. Kreag and Geen differ in their statements as to communications made by Kreag to the latter, and there is no independent testimony. It is clear, however, that Geen began his labors at the instigation of Kreag.

In this conflict of testimony, the burden being heavily upon Kreag in the first instance as claiming against a patentee, we must resort to certain well-established circumstances in the case, to ascertain from them, if possible, the exact relations of the parties, and the extent of the communication made by Kreag to Geen at the time of enlisting the latter's services. Geen admits that Kreag sent and brought him several old brushes, and most, if not all of them, were produced by the parties and made exhibits in the case. Some of these were felt and some bristle brushes; some had daubers attached, but the majority had not. Two had sheepskin faces for polishers attached to wooden backs, and in one of them the woolly skin pad was secured by nails to an under-cut portion of the back. Kreag also furnished another brush, which had the wooden back of the ordinary shoe

brush. A thick felt pad, thicker or more resilient midway between the ends, was nailed to the wooden back and covered with a strip of cloth for a polishing surface. It was in a new combination of the materials of these old brushes and their arrangement, making a superior polisher, that invention was found to exist when the patent was issued to Geen.

Kreag undoubtedly employed Geen to make a new brush, and, in addition to the sample brushes, furnished him with the materials used in his experiments. The itemized accounts rendered by Geen and paid by Kreag show this plainly. When the desired brush was produced, Geen made them in large quantities for Kreag, who furnished the materials and paid for the work. The relation of employer and employee once established, the law is well settled that when one conceives the principle or plan of an invention, and employs another to perfect the details and realize his conception, though the latter may make valuable improvements therein, such improved result belongs to the employer. *Milton* v. *Kingsley,* 7 App. D. C. 531, 537; *Gedge* v. *Cromwell,* 19 App. D. C. 192, 198; *Miller* v. *Kelley,* 18 App. D. C. 163, 170; *Gallagher* v. *Hastings,* 21 App. D. C. 88, 99; *Flather* v. *Weber,* 21 App. D. C. 179. Applying this principle to the established circumstances of the case, we are forced to the conclusion that Kreag had in mind the general plan of the new brush with resilient felt pads and sheepskin polishing surface when he employed Geen to undertake the work of construction. Whether he had in mind the fluted edges of the pads, also, is immaterial. With the three brushes, before described, in his possession, and with his mind bent on improvement upon them, we must believe that he had a general conception of the new construction, and that he must necessarily have communicated that conception to Geen, who by his skill as a mechanic was able to produce the desired construction, as well as to improve it. Notwithstanding the improvement upon the combinations of form and materials shown in the old brushes has been declared the exercise of inventive talent, we think that it was undoubtedly within the conception of Kreag in a crude form, at least, and that he disclosed it to Geen. As before de-

clared, it is not within our province, under the limitation of the jurisdiction conferred upon us in such cases as this, to say that the improvement was the result of mere mechanical skill, rather than of invention. Whatever it was, we are of the opinion, upon consideration of all the facts and circumstances disclosed by the evidence, that Kreag, and not Geen, is entitled to the benefit of it.

The decision will therefore be reversed, and this decision will be certified to the Commissioner of Patents.      *Reversed*